IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CORY MILO GRIFFIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-176 |
| | ) | (Formerly CR 114-027) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at the Federal Correctional Institution in Oakdale, Louisiana, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

   **A.   Indictment**

On March 5, 2014, a grand jury in the Southern District of Georgia charged Petitioner with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count One), notice to distribute child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A) (Count Two), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Three). United States v. Griffis, CR 114-027, doc. no. 1 (S.D. Ga. Mar. 4, 2014) ("CR 114-027"). Petitioner retained attorney Michael C. Garrett to represent him. (Id., doc.

nos. 34, 35.)

### B.     Agreement to Plead Guilty

On July 7, 2014, Petitioner pleaded guilty to Count One and the government agreed to dismiss the remaining counts.  (Id., doc. nos. 51, 52.)  The plea agreement contained a factual basis for the plea which stated as follows:

> On or about July 23, 2013 . . . the defendant . . . did knowingly distribute, or attempt to distribute, one or more images of child pornography . . . images visually depicting minors . . . engaged in sexually explicit conduct . . . in violation of Title 18 United States Code, Section 2252A(a)(2).  (Doc. no. 52, p. 2.)

The plea agreement also contained a waiver of appeal and waiver of collateral attack:

> (a) Waiver of Appeal.  Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground. The only exceptions are that Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence.  Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.
>
> (b) Waiver of Collateral Attack.  Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.

(Id. at 5.)

Petitioner attested he carefully reviewed the plea agreement with his attorney, understood each provision of the agreement, and voluntarily agreed to it.  (Id. at 9.) Petitioner's counsel stipulated he fully explained to Petitioner his rights and carefully reviewed each and every part of the plea agreement with Petitioner.  (Id.)  Counsel affirmed he believed Petitioner completely understood the plea agreement and that his decision to enter the plea agreement was informed, intelligent, and voluntary.  (Id.)

### C. Change of Plea Hearing

During the change of plea hearing, the Honorable J. Randal Hall established Petitioner's competence to enter a guilty plea if he desired. (Id., doc. no. 60, p. 24.) Petitioner testified under oath he had adequate time to discuss his case with his attorney and was entirely satisfied with the services rendered by Mr. Garrett. (Id. at 9.) Next, Judge Hall read each count of the indictment and asked if Petitioner understood the charges and the maximum penalties. (Id. at 8.) Petitioner confirmed he understood. (Id. at 8.) Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. (Id. at 9-10.)

Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (Id.) Petitioner affirmed no one had forced, threatened, or pressured him to plead guilty, (id. at 3) nor had anyone guaranteed, predicted, or prophesied Petitioner would receive a specific sentence. (Id. at 15-16.)

In addition, Judge Hall reviewed the waiver provision in Petitioner's plea agreement, informing Petitioner he was "waiving or giving up [his] right to appeal on any ground," and was "giving up [his] right to directly or in a post-conviction proceeding indirectly attack [his] sentence . . . ." (Id. at 12.) However, Judge Hall explained Petitioner could appeal if Petitioner was sentenced above the guideline range, above the statutory range, or if the government appealed. (Id.) Petitioner confirmed he understood. (Id.) Judge Hall also asked Petitioner if he discussed his plea agreement with counsel and if he signed the plea agreement, cautioning Petitioner that if he did, he would be bound by all the terms of the

3

agreement. (Id. at 11.) Petitioner affirmed he reviewed the plea agreement with counsel, signed the plea agreement, and understood he would be bound by all the terms within the plea agreement. (Id.)

Judge Hall heard the factual basis for Petitioner's guilty plea from Special Agent Brian Ozden with the Federal Bureau of Investigation. (Id. at 17.) SA Ozden testified his office investigated Petitioner pursuant to a lead from another division conducting undercover online operations of peer-to-peer networks. (Id.) An investigating agent discovered Petitioner maintained a folder in a peer-to-peer network. (Id. at 18.) The agent contacted Petitioner, agreed to exchange child pornography, and received from Petitioner a password to access Petitioner's folder and pornography collection. (Id.) The agent downloaded thirteen images of child pornography, before Petitioner, realizing the agent was not reciprocating, terminated the agent's access. (Id. at 19.) Agents subpoenaed the IP address, discovered Petitioner's physical address, and executed a search warrant of Petitioner's residence. (Id. at 20.) Agents seized Petitioner's computers and computer equipment, uncovering numerous gigabytes of pornography including child pornography. (Id. at 21-22.) SA Ozden testified Petitioner's pornography collection was "as extensive as any I've ever seen in the eleven years I've been doing this." (Id. at 22.) After Petitioner was arrested, he admitted to downloading and trading child pornography. (Id. at 21.) Judge Hall accepted Petitioner's guilty plea, finding a sound factual basis for it. (Id. at 24.)

    **D.**    **Presentence Investigation Report (PSI)**

The United States Probation Office prepared a PSI, and a probation officer met with Petitioner's aunt, who described herself as Petitioner's "closest confidant," seeking further information on Petitioner's personal and family life. (PSI ¶ 38.) Petitioner's aunt stated

Petitioner grew up in a tough family environment and suffered "a lot of verbal abuse." (Id. ¶ 40.) The PSI noted on February 1, 2014, Petitioner was admitted to the hospital after a suicide attempt, and was discharged on March 24, 2014. (Id. ¶ 43.) Medical testing revealed Petitioner suffered from depression and may also suffer from Klinefelter Syndrome (KS). (Id. ¶¶ 43, 44.)

The PSI set Petitioner's base offense level at twenty-two, pursuant to U.S.S.G. § 2G2.2. Petitioner's specific offense characteristics raised his offense level to forty after enhancements for: (1) material involving a prepubescent minor, (2) distribution with the expectation of receiving things of value, namely additional child pornography focusing on Petitioner's "fetish," (3) material depicting sadistic or masochistic conduct, (4) use of a computer, and (5) an offense involving in excess of 600 images. (PSI ¶¶ 18-22.) After deduction of three points for acceptance of responsibility, the total offense level was thirty-seven. (PSI ¶¶ 28-30.) Based on a criminal history category of I, Petitioner's guideline imprisonment range was 210 to 262 months. (PSI ¶ 56.)

### E. Sentencing

At sentencing on October 22, 2014, Petitioner did not object to the factual statements or the guideline range. (CR 114-027, doc. no. 61, p. 3.) Accordingly, Judge Hall adopted the PSI's factual statements as the Court's findings of fact, and determined the guideline range was 210 to 240 months. (Id.) Judge Hall then heard statements in mitigation from Petitioner's aunt, Petitioner, and Petitioner's attorney. (Id. at 4-18.)

Petitioner's aunt testified Petitioner was sexually abused as a child, had a troubled home life, and was working with a therapist. (Id. at 6.) Petitioner testified he was addicted to pornography and viewed child pornography but never intended to physically engage

5

children.  (Id. at 10.)  Petitioner also testified to attempting suicide.  (Id.)  Petitioner's counselor noted Petitioner's dedication to a military career, his age, his lack of a criminal history, and need for medical and psychiatric treatment.  (Id. at 13.)  Defense counsel urged the Court to consider Petitioner's need for rehabilitation and argued the guidelines range was too punitive.  (Id.)

After considering the statements in mitigation, Judge Hall outlined aggravating factors.  Judge Hall noted the problems with Petitioner's "collecting behavior," and emphasized the particularly large quantity of both adult and child pornography.  (Id. at 19.)  Judge Hall expressed concern over the duration of Petitioner's distribution, finding a year and a half to be a significant period of time.  (Id.)  Another aggravating factor was Petitioner's engagement in the child pornography community including the active trading and distributing of child pornography.  (Id. at 20.)  Judge Hall noted there was nothing in the record to suggest Petitioner engaged in any conduct toward children, but noted Petitioner's "age play fetish" would trigger conduct directly toward children if not stopped.  (Id.)  Judge Hall determined Petitioner's perverted sexual behavior could potentially lead to future harm to other individuals and the community at large.  (Id.)

Although Judge Hall noted Petitioner's age, performance as a student, and devoted service to the military, Judge Hall found the mitigating factors paled in comparison to the aggravating factors.  (Id. at 20-21.)  Judge Hall dismissed Counts Two and Three and sentenced Petitioner to 210 months of incarceration, the bottom of Petitioner's guideline range, a lifetime of supervised release, and a $100.00 special assessment.  (Id., doc. no. 58.)

### F. Subsequent Proceedings

Petitioner did not file an appeal, but timely filed this motion under 28 U.S.C. § 2255.

(Id., doc. no. 62.)  As the sole ground for relief, Petitioner contends his counsel was ineffective at sentencing for failing to have Petitioner evaluated by a qualified mental health professional who could have determined Petitioner was a minimal risk for committing a contact offense and a low risk for reoffending with child pornography.  (Id. at 2-3.)  Petitioner asserts, based on the Court's comments at sentencing, there is a reasonable probability counsel's failure obtain a psychosexual evaluation contributed to the Court's decision not to sentence Petitioner below the sentencing guideline range.  (Id. at 5.)  Respondent asserts Petitioner's claim is barred by the collateral attack waiver, Petitioner entered a knowing and voluntary guilty plea, and Petitioner's claim is otherwise meritless.  (Id., doc. no. 73.)  In his reply brief, Petitioner argues the Court should not enforce the collateral attack waiver because Petitioner's guilty plea was not knowingly and voluntarily entered, the collateral attack waiver created a conflict of interest, and Petitioner has raised a serious debatable issue that should be resolved by the Court.  (Id., doc. no. 78.)

## II.     DISCUSSION

### A.     There is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a

claim is raised. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B. Petitioner Is Not Entitled to Relief on His Ground One Ineffective Assistance Claim.**

**1. Petitioner's Valid Collateral Attack Waiver is Enforceable and Bars his Claim.**

Petitioner's sole claim asserts Mr. Garrett rendered ineffective assistance at sentencing by failing to have Petitioner evaluated by a qualified mental health professional because there is a reasonable probability the absence of a psychosexual evaluation contributed to the Court's decision not to vary below the sentencing guideline range. (Doc. no. 1, pp. 2-3.) Respondent argues Petitioner's claim is barred by the collateral attack waiver. (Doc. no. 14, p. 10.)

On October 14, 2014, the United States Department of Justice issued a memorandum to all federal prosecutors regarding the enforcement of appeal waivers in which defendants waive claims of ineffective assistance of counsel on direct appeal and collateral attack.[1] In relevant part, the memorandum states: "For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve."

---

[1] See Memorandum from James M. Cole, Deputy Attorney General, to All Federal Prosecutors (Oct. 14, 2014), available at
http://pdfserver.amlaw.com/nlj/DOJ_Ineffective_Assistance_Counsel.pdf

Id. However, this policy does not prohibit prosecutors from seeking to enforce a collateral attack waiver, and does not render a waiver null and void. Demello v. United States, 623 F. App'x 969, 972 (11th Cir. 2015).

Petitioner argues the Court should not enforce the collateral attack waiver because: (1) Petitioner did not knowingly and voluntarily waive his right to file a § 2255 motion; (2) enforcing the collateral attack waiver would deprive Petitioner of his constitutional right to conflict-free counsel; and (3) his ineffective assistance claim raises a "serious, debatable issue." (Doc. no. 19.) As explained below, these arguments do not prevent enforcement of Petitioner's valid collateral attack waiver, and the waiver bars Petitioner's claim.

### a. Petitioner Knowingly and Voluntarily Agreed to the Collateral Attack Waiver.

First, Petitioner claims he did not knowingly and voluntarily agree to the collateral attack waiver because he did not understand the full significance of the waiver. (Doc. no. 19, p. 2.) Petitioner declares his attorney only told him he was waiving his right to a direct appeal, failed to explain the differences between the appeal waiver and the collateral attack waiver, did not explain collateral attack by 28 U.S.C. § 2255 motion, and did not explain that ineffective assistance of counsel claims could be raised by § 2255 motion. (Doc. no. 19-1, pp. 1-2.) Petitioner further declares he did not understand the waiver provision barred the assertion of ineffective assistance of counsel claims, and that neither the court nor counsel explained this to him. (Id.) Petitioner also claims counsel did not explain the risks and benefits to § 2255 motions, nor did counsel provide him the opportunity to consult with "non-conflicted" counsel prior to agreeing to the collateral attack waiver. (Id.)

9

It is well settled that a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008); see also United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); Bushert, 997 F.2d at 1345; see also Vaca-Ortiz, 320 F. Supp. 2d at 1365-67 (applying case law concerning waiver of direct appeal to waiver of the right to collateral proceedings). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then an appeal and collateral attack waiver is enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); Benitez-Zapata, 131 F.3d at 1146-47.

Here, despite Petitioner's contentions he did not understand the collateral attack waiver, Respondent has demonstrated Petitioner knowingly and voluntarily assented to the valid collateral attack waiver. Judge Hall reviewed Petitioner's plea agreement during the plea colloquy, and specifically referenced the waiver provision. (Id., doc. no. 60, p. 12.) Judge Hall explained that as a result of the waiver provision, Petitioner was "waiving or giving up [his] right to appeal on any ground . . . [and] giving up [his] right to directly or in a post-conviction proceeding indirectly attack [his] sentence . . . ." (Id.) Petitioner acknowledged he understood and agreed to be bound by all of the terms of the agreement.

10

(Id. at 10-11.)  Petitioner testified he was satisfied with the help he received from counsel, and understood all the rights he would be waiving by pleading guilty.  (Id. at 9-11.)

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1997).  In the face of the sworn proceedings memorialized in the record, Petitioner's belated, self-serving claims his counsel failed to explain the collateral attack waiver such that his agreement to the waiver was unknowing and involuntary, does not satisfy the Strickland standard.  Demello, 623 F. App'x at 970.  Judge Hall's thorough review of the collateral attack waiver during the plea colloquy and Petitioner's sworn affirmation he understood, forecloses Petitioner's argument he did not knowingly and voluntarily agree to the waiver.  See id. (finding petitioner's collateral attack waiver knowing and voluntary when District Judge explained petitioner was waiving his rights to appeal through direct appeal or "indirect appeal in post-conviction proceeding," at plea colloquy.)

Furthermore, it is manifestly clear from the record that Defendant understood the significance of the waiver.  The plea agreement signed and verified by Petitioner fully set forth that, as a condition of his guilty plea, he was waiving any right to collaterally attack his sentence and conviction by a § 2255 motion.  (See CR 114-027, doc. no. 52, p. 5 ("Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground . . . Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 proceeding.").)  Petitioner, a college graduate and former commissioned military officer,

11

signed his plea agreement and provided he "read and carefully reviewed [the plea] agreement with [his] attorney . . . and under[stood] each provision of the agreement and . . . voluntarily agree[d] to it." (Id. at 9.) The collateral attack waiver provisions of the plea agreement were unambiguous, and it is manifestly clear Petitioner understood them. See Aragon-Cuera v. United States, No. 8:05-CR-539T24TBM, 2007 WL 2330832, at *4 (M.D. Fla. Aug. 14, 2007) ("[Petitioner's] collateral attack waiver is unambiguous . . . it is manifestly clear from the record that [petitioner] understood the full significance of the waiver.")

Because Judge Hall specifically questioned Petitioner about the collateral attack waiver at the plea colloquy, and because it is manifestly clear from the record Petitioner fully understood the significance of the waiver, Petitioner will not now be heard to claim that he did not knowingly and voluntarily agree to the collateral attack waiver. Such assertions are contradicted by Petitioner's sworn testimony at his plea colloquy and his agreement to the terms of his plea. See United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

### b. Petitioner Was Not Denied Conflict-Free Representation by the Collateral Attack Waiver.

Second, Petitioner argues the Court should not enforce the collateral attack waiver because doing so would deny Petitioner his right to conflict-free representation. (Doc. no. 19, p. 7.) Petitioner asserts former counsel never disclosed the plea agreement's collateral attack waiver would insulate former counsel from ineffective assistance of counsel claims, thus creating a conflict of interest. (Id.)

To find counsel was ineffective based on a purported conflict of interest, Petitioner

must show "first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001); see also Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). To show an actual conflict, "[a] § 2255 [movant] must show 'inconsistent interests *and* must demonstrate that the attorney made a choice between possible alternative courses of action.'" Pegg, 252 F.3d at 1274 (emphasis added). In guilty plea cases, courts look at "whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." Id. at 1287.

Here, no actual conflict of interest existed between Petitioner and former counsel because of the appeal and collateral attack waivers in his plea agreement. "Long has the Eleventh Circuit approved the use of such waivers and never has it found one to inherently generate a conflict." Drayton v. United States, No. CR612-018, 2016 WL 2646650, at *2 (S.D. Ga. May 9, 2016), report and recommendation adopted, No. CR612-018, 2016 WL 3101679 (S.D. Ga. June 1, 2016) (citing Benitez-Zapata, 131 F.3d at 1446); see also Branks v. United States, No. 8:09-CR-431-T-33TGW, 2012 WL 206969, at *11 (M.D. Fla. Jan. 24, 2012) (finding petitioner failed to show conflict of interest from valid appeal waiver). Controlling Eleventh Circuit precedent upholds knowing and voluntary appeal and collateral attack waivers such as Petitioner's waiver. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1887); Untied States v. Bushert, 997 F.2d 1343, 1353 (11th Cir. 1993).

Finally, Fed. R. Crim P. 11(b)(N) expressly contemplates appeal and collateral attack waiver provisions. Fed. R. Crim. P. 11(b)(1)(N) ("[T]he court must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence."). Consequently, the Court finds the waiver provisions in Petitioner's plea agreement did not create a conflict of interest.

Furthermore, even if an actual conflict of interest exists, there must be proof the conflict adversely affected counsel's performance in order to rise to the level of a Sixth Amendment violation. Pegg, 253 F.3d at 1277. To prove adverse effect, a habeas corpus petitioner must show the existence of a plausible alternative defense strategy that might have been pursued, the strategy or tactic was reasonable, and there was a link between the actual conflict and the decision to forgo the alternative defense strategy. Id. at 1278. Here, Petitioner has not demonstrated the existence of a plausible alternative defense strategy that was not pursued because of counsel's purported conflict of interest. See id. Petitioner never suggested he would have proceeded to trial but for the waiver provisions in his plea agreement, nor has he shown counsel decided to forego another reasonable strategy in favor of the plea agreement. Accordingly, Petitioner cannot establish his collateral waiver resulted in a conflict of interest, and cannot escape the consequences of the waiver.

### c. Petitioner Does Not Raise a Serious Debatable Issue

Petitioner also argues the Court should not enforce the collateral attack waiver because his case presents a "serious, debatable issue." (Doc. no. 19, p. 8.) However, Petitioner misunderstands the DOJ policy. The DOJ policy provides federal prosecutors with the sole discretion to seek enforcement of a collateral attack waiver, and the authority to determine if a petitioner's claim presents a serious debatable issue in each case. Demello, 623 F. App'x at 972. Regardless, even if the waiver were not enforceable, there is no merit to Petitioner's ineffective assistance claim as explained below.

### 2. Petitioner's Claim is Meritless and Counsel Was Not Ineffective.

Petitioner's sole claim alleges counsel was ineffective as sentencing because counsel failed to have Petitioner evaluated by a mental health professional, and but for this error,

14

Judge Hall would have sentenced Petitioner below the sentencing guideline range. (Doc. no. 1, p. 5.)  The government asserts this claim is meritless and fails to establish prejudice.

### a. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003).  Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

15

sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

### b.     Petitioner's Claim is Meritless

Petitioner's claim is meritless because counsel's performance was not deficient merely because he did not order a psychosexual evaluation for sentencing purposes. The decision was entirely within counsel's exercise of reasonable professional judgment. See Meyer v. United States, No. 4:07-CR-01181-TLW, 2015 WL 178118, at *4 (D.S.C. Jan. 14, 2015), appeal dismissed (May 27, 2015) (finding counsel's decision not to order psychosexual evaluation was exercise of reasonable professional judgment); Watters v. United States, No. 11-CV-1181, 2011 WL 3563168, at *3 (C.D. Ill. Aug. 15, 2011) ("If Petitioner's attorney's decision to not have her psychologically evaluated in her child pornography case constitutes deficient performance, then a psychological examination would be required in every single child pornography prosecution in order to avoid an ineffective assistance reversal. The Sixth Amendment does not require this, and the Court will not countenance such an absurd result."). Because Petitioner has not established counsel performed deficiently, he has not established ineffective assistance. Strickland, 466 U.S. at 697.

Furthermore, the failure to order a psychosexual evaluation did not result in prejudice. To prove prejudice, Petitioner must establish in light of the record as a whole, counsel's deficient performance resulted in a reasonable probability the outcome would have been different. See Matire v. Wainwright, 811 F.2d 1430, 1434 (11th Cir. 1987). Here, Petitioner has not made an affirmative showing of prejudice that would undermine confidence in the outcome. See Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

At sentencing, Judge Hall identified aggravating and mitigating factors considered in sentencing Petitioner to 210 months incarceration, a sentence at the bottom of the sentencing

guideline range. As aggravating factors, Judge Hall identified Petitioner's "collecting behavior," the particularly large quantity of both adult and child pornography, the duration of Petitioner's conduct, Petitioner's engagement in the child pornography community, and Petitioner's use of a password to protect his collection. (CR 114-027, doc. no. 61, pp. 19-20.) Judge Hall also surmised Petitioner's "age-play fetish" would trigger conduct directly towards children if not stopped. (Id.) As mitigating factors, Judge Hall noted Petitioner's youth, history as a good student, and devoted military service, but also determined these factors paled when compared with the aggravating factors and Petitioner's history of disturbing and perverted sexual behavior that could potentially harm individuals and the community at large. (Id. at 20-21.)

Petitioner has now retained Dr. Mark Vigen, a clinical psychologist, for purposes of this motion, who evaluated Petitioner on October 27, 2015, by conducting a psychosexual evaluation. (Doc. no. 7.) Petitioner asserts Dr. Vigen's evaluation is mitigating and should have been produced and submitted by former counsel at sentencing. (Doc. no. 1, p. 5.) The report details Petitioner's extensive family history, analyzes Petitioner for pedophilic disorder, and opines that Petitioner "does not view children as appropriate sexual partners . . . [and] the risk of [Petitioner] committing a contact offense against a child in the future is low." (Doc. no. 7, p. 5.) The report further indicates Petitioner does not "socialize within the child pornography community . . . [Petitioner] is not a pedophile . . . [and] is a low risk for reoffending with child pornography." (Id. at 7.)

Here, Dr. Vigen's report does little to alleviate the Court's expressed concerns at sentencing. While Dr. Vigen found Petitioner had a low or minimal risk of reoffending, he also concludes Petitioner "is aroused by any person who is not of typical diaper-wearing

age," and details Petitioner's pursuit for "the perfect" pornographic image led Petitioner to child pornography. (Id. at 3-4.) Dr. Vigen further opines "[Petitioner's] delay in developing the ability to form close emotional attachments . . . increase[s] the risk he could offend (download pornography) in the future." (Id. at 7.) Significantly, Dr. Vigen's report suggests Petitioner may re-offend by distributing child pornography in order to obtain pornography that satisfies his fetishes. (Id. at 12.)

Furthermore, much of the information provided in Dr. Vigen's evaluation was already before the Court at sentencing. Like Dr. Vigen's report, Petitioner's PSI details Petitioner's troubled family history, early exposure to pornography, his age-play fetish, failed suicide attempt, his alleged disinterest in children as sexual partners, and the absence of evidence Petitioner ever molested a child. (Compare PSI ¶¶ 39-52 with doc. no. 7, pp. 7-21.)

More significantly, the Court's assessment of Petitioner's risk of future harm to children or of reoffending was only one of several considerations underlying its sentencing determination. The Court was equally, if not more, focused on the gravity of Petitioner's past conduct, including Petitioner's enormous pornography collection, the extensive period of time in which Petitioner distributed child pornography, and Petitioner's extended involvement in the child pornography community. Because Dr. Vigen's report does little, if anything, to address the concerns with Petitioner's past conduct that led the Court to impose a lenient sentence at the bottom of the guideline range, it is unlikely former counsel's presentation of a psychosexual evaluation would have produced a different outcome at sentencing. Thus, Petitioner has failed to demonstrate prejudice, and counsel was not ineffective.

In sum, the collateral attack waiver bars Petitioner's claim. Even if the collateral attack wavier does not apply, Petitioner's claim is meritless because Petitioner cannot show deficient performance or prejudice.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of February, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA